JOHN W. BRINK, Appellant, *against* EDMUND B. FAY, *et al*,
Respondent.

(Decided April 1st, 1878.)

A master may, before the expiration of a term of hiring, discharge his servant for bringing actions for instalments of wages, that are not yet due, and for talking of these actions with his master's other servants and with members of firms of merchants competing in business with his master, and saying that his master is in such poor credit that he has had to sue him for his wages.

If the servant, recklessly, and with a disregard of consequences to his master, does what is likely to work substantial injury to his master, the latter may discharge him and terminate the hiring and bringing vexatious and unfounded suits against his master is such conduct.

APPEAL from a judgment entered against the plaintiff, on an order of the court at special term, JOSEPH F. DALY, J., dismissing the complaint.

The action was brought by Brink to recover damages for a breach of contract of hiring. The complaint alleged that the defendants employed the plaintiff under a written contract for the term of two years from January 1st, 1876, at the salary of $2,000 per year, and that on the 22d day of September, 1876, the defendants without just cause discharged the plaintiff.

It appeared by the plaintiff's testimony that up to May, 1876, the defendants had paid the plaintiff four months' salary, and that about the middle of May he brought an action against his employers for two weeks' salary, and afterwards brought several other actions to recover other semi-monthly installments of salary, which he claimed was due from his employers. One of these actions, it also appeared, brought in a District Court, resulted in a verdict and judgment for the plaintiff, which judgment on appeal to this court had

been reversed, on the grounds that the justice before whom the action was tried erroneously admitted parol evidence as to the time of payment of the salary, and that under the written agreement alone plaintiff had no cause of action for his salary until the expiration of the year. It appeared also by the plaintiff's testimony that he had during the time he was employed, consumed time in attending court, consulting his counsel in connection with these actions, had compelled the book-keeper of the defendants to attend in court as a witness, and had talked about his, the plaintiff's suits, with the other employees of the defendants, as well as with salesmen and members of firms competing in business with the defendants, but that he did not think he was thereby injuring defendants. The plaintiff was asked several questions by his counsel as to his motive in suing his employers, which were ruled out by the court, and to this ruling and to the dismissal of this complaint exceptions were taken by the plaintiff. Defendants put in evidence the papers in the different actions brought by plaintiff.

*William A. Coursen*, for appellant.

If hired for a definite term the servant cannot be dismissed by the master before the expiration of the term unless for immoral conduct, willful disobedience, habitual neglect, incompetency or permanent disability from illness. (Kent, vol. II., p. 286 ; Schouler's Domestic Relations, p. 612 ; Smith, Master and Servant, p. 212.) The exclusion of evidence of plaintiff's motives in bringing actions against defendants was error. (*Griffin* v. *Cranston*, 1 Bosw. 281 ; *Miller* v. *The People*, 5 Barb. 203 ; *Nichols* v. *Pinner*, 18 N. Y. 297.)

*Amos G. Hull* for respondent.

The plaintiff's conduct was inconsistent with his duty, and defendants were justified in discharging him. (Chitty on Contracts, p. 580, and notes, 5th Am. Ed.; *Adams Exp.*

*Co.* v. *Trego,* 35 Md. 64; *Nichol* v. *Martyn,* 2 Esp. 732; *Ridgway* v. *The Hungerford Market Co.,* 3 Adol. & Ellis, 171; *Locy* v. *Osbaldiston,* 8 Car. & P., 80; *Harrington* v. *First Nat. Bank,* 1 Sup. Ct. (T. & C.) 367; Wood's Master and Servant, p. 166; Petersdorff's Master and Servant, p. 28.)

VAN HOESEN, J.—On the 15th day of November, 1875, the plaintiff agreed to enter the service of the defendants, Fay, Hazen & Company, on the first of January, 1876, and to sell goods for them, and assist in the parasol department of their store during the years 1876 and 1877, for two thousand dollars per year, and three hundred dollars per year extra for work in the parasol department. On the 26th of November, 1875, the defendants agreed to pay the plaintiff in addition four per cent. on all sales made by him in excess of fifty thousand dollars per year to customers whose trade was brought to the house through his influence. No time or times at which the plaintiff was to receive his wages were specified.

The plaintiff was sometimes paid every two weeks, and soon insisted that he had a right to draw his pay fortnightly. This the defendants denied. The plaintiff then sued the defendants in the Marine Court for $83 33. That action was begun on May 15th, 1876. On the 1st of July, 1876, he began an action in the Common Pleas against the defendants for $166 67. The summons and the complaint in that action were afterwards amended by increasing the amount claimed to $588 33. On the 15th day of June, 1876, the plaintiff sued the defendants in the Eighth District Court, and on the 20th of September, 1876, he brought another action in that Court. The action last mentioned was discontinued on the 26th of September. The plaintiff swore that, except when the first suit in the District Court was tried, but little of his time was taken up in the prosecution of these various actions.

The plaintiff further said that whilst in the service of the defendants he had told ten, perhaps fifteen, persons about his

suits. Many of these persons were salesmen in the defendants' employ, but some were members or employees of firms competing in trade with the defendants.

On the 22d of September, 1876, Mr. Martin, one of the defendants, discharged the plaintiff, saying, " You are an unfaithful employee. You are attempting to injure the credit of the house. Your services are no longer needed." The plaintiff then left, and brought this action for damages for his discharge, which he believes to have been wrongful.

After the plaintiff had testified, and the defendant had put in evidence the papers in the different actions brought by the plaintiff, the judge at the trial dismissed the complaint, saying, "A servant who wishes to remain in the employ of his master, and yet sues him repeatedly, occupying the position of an adversary at law, must see to it at his peril that he has a good cause of action ; for, if his suit be premature, it is in his employer's power to dismiss him on the spot. Now the law laid down by the general term is that the suit (begun in the Eighth District Court, June 15th, 1876,) was premature, and I hold, therefore, that his employers had a good cause of dismissal, on account of his having brought these suits. For that reason I dismiss the complaint." It may be necessary to say here that the general term had previously held, on an appeal from the judgment rendered by the Eighth District Court, that as the contract of hiring was in writing, parol evidence could not be received to show that the defendants agreed orally to pay the plaintiff fortnightly, and that as the written contract contained no provision as to the times of payment, the plaintiff could not demand payment till the expiration of the term of employment.

The single question presented to us on this appeal is : Did the conduct of the plaintiff give the defendants good and sufficient cause to discharge him ? It is not wrong for a servant to make an honest appeal to the law to compel his master to pay him his wages. If a master will not pay what is due, it is the right of the servant to ask the courts to aid him in getting his hire. But if the servant drags his master into court as much for spite as for the sake of wages, he

shows that he seeks to do his master harm, and ought to lose his place. What is it but unjustly to vex the master, for the servant to sue him for wages that are not due? The servant, like the master, is bound to know the law, and to know the times at which he may get his pay. If the written contract be silent as to the times of payment, the servant must wait for his wages till his work be all done. He may show a general custom, or even a special custom of his master, to pay at certain stated times, but he cannot alter or vary the written contract by proof of an oral promise to pay in part payments. A servant, when pressed to pay a bill which he is not able to meet, might give as an excuse for not paying the failure of his master to pay him, but if he maliciously, or even wantonly, spread the report that his master did not pay his servants, the master would not be bound to keep him. Tattling, or disclosing family secrets, is a good cause for turning a servant away. (*Beeston* v. *Collyer*, 2 C. & P. 607.) In short, the servant is in duty bound to care for his master's interests, and if with a bad motive, or through recklessness or thoughtlessness he does what is likely to work substantial injury to his master, he may be discharged. In this case there is no doubt as to what the plaintiff did. His own testimony proves that he repeatedly sued the defendants for wages that were not due, and that he needlessly told rival traders that the defendants were in such poor credit that he had to sue them for his salary. This shows that he took a hostile position towards his employers, which made it unsafe for them to trust him with their interests. How could they rely upon him as an assistant whilst he was casting doubt upon their solvency? Though a temperate and honest resort to the courts to obtain a determination or an enforcement of his claims is the lawful right of a servant, whilst still in the employ of the master whom he sues, yet the bringing of four suits, and the simultaneous spreading of damaging statements respecting his employers, indisputably prove defiance and hostility, and are entirely out of accord with the spirit that should govern a servant in his relations with his master. The plaintiff did not ask the judge to submit to the jury the

Brink v. Fay.

question whether the acts of the plaintiff, and the spirit he manifested, were such as to make it unsafe for the defendants to retain him in their service, but even if such a request had been made, I think the facts that were established were such as to call on the judge to decide whether or not as matter of law the discharge was lawful.

I think the judgment should be affirmed with costs.

CHARLES P. DALY, Ch. J., and LARREMORE, J., concurred.

Judgment affirmed.